UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CRIMINAL ACTION NO. 24-34-DLB-CJS**

**UNITED STATES OF AMERICA**                                                                                       **PLAINTIFF**

**VS.**                     **MEMORANDUM OPINION AND ORDER**

**GENGHIS KHAN STEVENSON**                                                **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**I.   INTRODUCTION**

This matter is before the Court upon Defendant Genghis Khan Stevenson's Motion to Suppress. (Doc. # 49). After the United States filed its Response (Doc. # 51) and Defendant filed his Reply (Doc. # 53), the Court conducted an evidentiary hearing on the Motion on June 24, 2025. (Doc. # 64). Defendant was present for the hearing and was represented by Attorney Edward L. Metzger, III. The United States was represented by Assistant United States Attorney Anthony J. Bracke. At the conclusion of the hearing, the Court took the Motion under submission. For the following reasons, the Motion is **denied**.

**II.   ISSUES RAISED**

Defendant moves the Court to suppress evidence seized by law enforcement officials on March 28, 2024.[1] (Doc. # 49 at 1). The evidence was seized after Defendant allegedly consented to warrantless searches of his belongings, specifically, his backpack and suitcase. (*Id.* at 3-5). In his Motion, Defendant argues that the evidence should be

---

[1] Defendant also moves to suppress any statements he made to law enforcement officials on March 28, 2024. (*See* Doc. # 49 at 4-5 (citing Defendant's *Miranda* rights)). The Court addresses this issue below.

1

suppressed because no exception to the Fourth Amendment's warrant requirement applied to the searches at issue. (*Id.* at 7). In its Response, the United States argues to the contrary that Defendant voluntarily consented to the searches. (Doc. # 51 at 4-5). Defendant contests this argument in his Reply. (Doc.. # 53).

### III.   FINDINGS OF FACT

During the evidentiary hearing held on June 24, 2025, the Court heard testimony from two witnesses called by the United States: (1) Richard Bernecker, an officer with the Colerain Township (Ohio) Police Department and a task force officer with the Drug Enforcement Administration ("DEA"); and (2) Michael Keller, a DEA special agent. Defendant did not call any witnesses, nor did he testify on his own behalf. Weighing the credibility of the witnesses, and considering the exhibits admitted during the hearing, the Court makes the following factual findings.

On March 28, 2024, interdiction agents working at the Cincinnatti/Northern Kentucky International Airport ("CVG") learned that Defendant was set to board a one-way flight to Los Angeles later that day. The agents also discovered that Defendant had purchased his ticket for the flight one day prior and that he had a criminal history which included prior narcotics offenses. Los Angeles is a well-known "source city" for narcotics. Defendant's itinerary, criminal history, and destination raised "red flags" for the agents.

After the agents learned that Defendant had checked a suitcase for his flight, Agent Rob Minter took his K9 companion Brodie to the area where the suitcase was located. Brodie alerted to the presence of narcotics in Defendant's suitcase.[2] At around the same time, the other agents waited for Defendant to arrive at the outbound gate for his flight.

---

[2]   Defendant does not challenge the legality of the K9 sniff or whether Brodie alerted to the presence of narcotics in Defendant's suitcase.

2

Agent Eli Sautter stood behind the gate's ticket counter and Agents Bernecker and Keller waited in a hallway adjacent to the jetway leading to the plane.

Defendant then arrived at the outbound gate carrying a backpack. After Defendant scanned his boarding pass, Agent Sautter gave Agents Bernecker and Keller "the thumbs-up," which indicated to Agent Bernecker that Defendant was the individual they had identified from his flight information. Agent Bernecker then introduced himself to Defendant and showed Defendant his badge and identification. Agent Bernecker explained to Defendant that he was looking for large amounts of currency, narcotics, and other contraband. When asked whether he possessed any of those items, Defendant stated that he possessed some cash but that it was "definitely" under $10,000.

Agent Bernecker then asked for Defendant's consent to search his backpack. Defendant consented to the search. During the ensuing search, Agent Bernecker discovered over $15,000 in United States currency inside the backpack. When asked about the source of the cash, Defendant stated that it was gambling winnings. When asked why he had travelled to the Cincinnatti area, Defendant stated that he was a real estate investor who was there looking for properties to purchase.

At around this time, the agents at the gate area learned about Brodie's alert on Defendant's suitcase. Agent Minter then brought the suitcase to the gate area and asked Defendant whether it belonged to him. After Defendant identified the suitcase as his own, Agent Minter advised Defendant that the suitcase was locked and asked Defendant for permission to search it. Defendant consented to the search of the suitcase and unlocked and opened the suitcase for the agents. Upon searching the suitcase, Agent Bernecker discovered a paper bag containing a "pressed" white powder which he believed at the

3

time to be cocaine. The white powder was subsequently tested and determined to be approximately 250 grams of fentanyl. When asked whether the powder was fentanyl or anything that could potentially harm the agents, Defendants answered "no." Defendant was then arrested.

The whole encounter between the agents and Defendant lasted approximately 10 minutes. During their interaction with Defendant, the agents wore plain clothes, did not display any weapons, did not raise their voices, did not threaten Defendant, and did not handcuff or otherwise restrain Defendant. Nor did any of the agents physically touch Defendant before he was arrested.[3] Moreover, Agent Bernecker noted that Defendant was very calm, relaxed, and cooperative during his interaction with the agents.[4]

---

[3] In his Motion, Defendant alleges that Agent Bernecker initially approached Defendant and "grabbed him by the shoulder, precluding him from boarding the plane." (Doc. # 49 at 4). Defendant also alleges that Agent Bernecker "grabbed [his] backpack off his shoulder[.]" (*Id.*). Defendant presented no evidence at the evidentiary hearing to support these allegations. Moreover, the Court finds credible Agents Bernecker and Keller's testimony that Defendant was not physically touched before he was arrested.

[4] At the evidentiary hearing, Defendant requested that the Court view the United States' evidence with skepticism due to the potential spoliation of evidence in this case—specifically, surveillance video recordings depicting Defendant's encounter with the agents at the gate. Defendant's counsel had initially requested several videos from the United States only to be told that they did not exist. After this Court granted Defendant's *Ex Parte* Application for Subpoena (Doc. # 54), however, certain of the videos he initially requested were produced to Defendant's counsel—but still no video depicting the agents' encounter with Defendant at the gate.

Based on these circumstances, Defendant asks the Court to infer that the unproduced video depicting the events at the gate would be unfavorable to the United States. The Court declines to make this inference for two reasons. First, the adverse inference Defendant requests is typically only warranted where spoliation of evidence has been demonstrated. *See United States v. Braswell*, 704 F. App'x 528, 533-36 (6th Cir. 2017). But here, it is unclear whether any video depicting the encounter between Defendant and the agents at the gate ever existed in the first place. Moreover, even if spoliation of evidence was demonstrated, Defendant's requested inference would only be warranted if he could show that the video was "destroyed with a culpable state of mind." *Id.* at 534 (quoting *Flagg v. City of Detroit*, 715 F.3d 165, 177 (6th Cir. 2013)). But Defendant has not produced any evidence to make this showing. To the contrary, the Court heard testimony that CVG's surveillance video recordings are automatically overwritten every 30 days, which belies any claim that a particular video was destroyed with a culpable state of mind.

**IV.   ANALYSIS**

Defendant argues that the searches of his belongings violated the Fourth Amendment. (Doc. # 49). Defendant's Motion also argues that certain statements of his were obtained in violation of his Fifth Amendment right against self-incrimination. (*See id.* at 4-5 (citing Defendant's *Miranda* rights)). The Court disagrees, and addresses each of these issues in turn.

**A.   Defendant voluntarily consented to the searches of his belongings.**

The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. Generally, if a search or seizure is not conducted in compliance with the Fourth Amendment, all evidence obtained because of the search or seizure must be suppressed. *See United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008) ("[E]vidence and statements obtained from [an] illegality must be excluded as 'fruit of the poisonous tree.'") (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). Warrantless searches are per se unreasonable "except in a few specifically established and well-delineated exceptions." *United States v. Lewis*, 504 F.2d 92, 100 (6th Cir. 1974) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)) (internal quotation marks omitted). The burden is on the United States to demonstrate the applicability of an exception to the warrant requirement. *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005).

Here, it is undisputed that the challenged searches of Defendant's belongings were not authorized by a warrant. Therefore, to pass constitutional muster, the United States

5

must establish that one of the specifically established exceptions to the warrant requirement applied.  *Katz*, 389 U.S. at 357.

"Consent is an exception to the Fourth Amendment's warrant requirement." *United States v. Lewis*, 81 F.4th 640, 651 (6th Cir. 2023) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).  That said, "consent must be 'voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.'" *United States v. Bowser*, 505 F. App'x 522, 525 (6th Cir. 2012) (quoting *United States v. Lucas*, 640 F.3d 168, 174 (6th Cir. 2011).  Whether consent was voluntary turns on "the totality of the circumstances, including the individual's age, intelligence and education; whether the individual understands his right to refuse consent and his constitutional rights; the length and nature of the detention and whether the police used any coercive or punishing conduct, including subtle forms of coercion that might flaw an individual's judgment." *United States v. Collins*, 683 F.3d 697, 702 (6th Cir. 2012) (quoting *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998)) (internal quotation marks omitted).  Moreover, "[w]hether consent to search is voluntary is a question of fact[,]" and "a district court's finding of voluntary consent will not be reversed unless it is clearly erroneous." *Id.* (internal citations omitted).

Here, the first and third factors unambiguously support a finding that Defendant voluntarily consented to the searches.  As to the first factor, Defendant is 46 years old and there is no indication that his lack of intelligence or education (if any) impacted his ability to consent to the searches.  (Doc. # 51 at 5).  Regarding the third factor, Defendant's encounter with the agents lasted approximately 10 minutes, making the interview significantly shorter as compared to at least one other case within this circuit. *See United States v. Blevins*, No. 3:18-cr-00022-TAV-HBG, 2019 WL 5866142, at *11

6

(E.D. Tenn. July 30, 2019), *report and recommendation adopted by* 2019 WL 5865925 (E.D. Tenn. Nov. 8, 2019) (police interview lasting "a couple of hours" was not coercive). Moreover, there is no indication that the agents utilized any coercive or punishing conduct in obtaining Defendant's consent. To the contrary, the agents wore plain clothes, did not display any weapons, did not raise their voices, did not threaten Defendant, did not handcuff or otherwise retrain Defendant, and did not physically touch Defendant before he was arrested. Moreover, Agent Bernecker noted that Defendant was very calm, relaxed, and cooperative during his encounter with the agents.

Assessment of the second factor is slightly more ambiguous. On cross-examination, Agent Bernecker testified that the only time he told Defendant that he could refuse consent was after Defendant's backpack had already been searched. Regardless, even if Defendant did not actually know that he could refuse consent before his backpack was searched, this still would not show that his consent was involuntary. As this Court has noted, "[c]onsent can still be voluntary without knowledge of one's right to refuse." *United States v. Slone*, No. 7:12-cr-00005, 2013 WL 3799419, at *7 (E.D. Ky. July 19, 2013) (Thapar, J.) (citing *Schneckloth*, 412 U.S. at 227); *Collins*, 683 F.3d at 702 (although knowledge of one's right to "refuse consent to search is a factor to consider in determining whether consent was voluntary, police do not have to inform an individual of his right to refuse to consent to a search.").

For all of these reasons, and given the totality of the circumstances, the Court finds that the Defendant voluntarily consented to the searches of his belongings. Before doing so, however, the Court must address an argument to the contrary that Defendant raised for the first time at the evidentiary hearing. As Defendant noted, DEA policy requires

7

agents to fill out a DEA-177 form after engaging in consensual encounters at mass transportation facilities such as airports. (*See* Doc. # 66-2). In this case, however, the agents failed to complete the DEA-177 form. Defendant also cites a report from the Department of Justice's Office of the Inspector General detailing agency-wide failure of DEA agents to complete DEA-177 forms and a memorandum from the former Deputy Attorney General suspending consensual encounters due to this failure. (*Id.*).

Although Defendant is less than clear on this point, he appears to argue that the agents' failure to complete a DEA-177 form impacts whether the searches of his belongings complied with the Fourth Amendment. But this argument is unavailing. The agents' failure to follow internal DEA policy does not, by itself, establish a Fourth Amendment violation. *See Relford v. Lexington-Fayette Urb. Cnty. Gov't*, 390 F.3d 452, 459 (6th Cir. 2004) ("Although the County may have arbitrarily strayed from its internal policies, that conduct does not conclusively establish a Fourth Amendment violation."). And for the reasons stated above, the searches of Defendants' belongings were otherwise constitutional.

Based on the above, the Court concludes that the evidence seized because of the searches was not obtained in violation of the Fourth Amendment. And in the absence of any other reason to do so, the Court will not suppress such evidence.

**B.    Any statements by Defendant were not obtained in violation of the Fifth Amendment.**

The Fifth Amendment provides, in pertinent part, that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. "In *Miranda v. Arizona*, the Supreme Court held that, in order to protect against compulsory self-incrimination, a suspect may not be subject to custodial interrogation until

he has been informed of his right to counsel and his right to remain silent." *Koras v. Robinson*, 123 F. App'x 207, 210 (6th Cir. 2005) (citing 384 U.S. 436, 479 (1966)). "Statements made by a defendant in response to interrogation while in police custody are not admissible unless the defendant has been [apprised] of the constitutional right against self-incrimination and has validly waived this right." *United States v. Cole*, 315 F.3d 633, 636 (6th Cir. 2003) (citing *Miranda*, 384 U.S. at 478-79). In other words, "[t]he requirements of *Miranda* arise when a defendant is both: (1) in custody; and (2) being interrogated." *United States v. Hinds*, Case No. 18-20533, 2019 WL 7172090, at *2 (E.D. Mich. Dec. 23, 2019) (citing *United States v. Swanson*, 341 F.3d 524, 528 (6th Cir. 2003)).

It is undisputed that Defendant was not *Mirandized* before he spoke to law enforcement. It is also undisputed that Defendant was being interrogated when he spoke to the agents. Thus, the sole issue is whether Defendant was in custody when he spoke to the agents. For the following reasons, the Court concludes that he was not.

"For purposes of *Miranda*, a person is in custody when, under the circumstances surrounding the interrogation, the person was under formal arrest or experienced restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Landor*, 699 F. Supp. 2d 913, 919 (E.D. Ky. 2009) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)) (internal quotations and bracketing omitted). Courts consider several factors to determine whether an interrogation was custodial, "including (1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions." *United States v. Hinojosa*, 606 F.3d

9

875, 883 (6th Cir. 2010). Here, the balance of the factors counsels against a finding that Defendant was in custody.

As to the first factor, Defendant was questioned in a hallway adjacent to the jetway leading to the plane. Other passengers were walking through the area during the agents' encounter with Defendant. Where a defendant was questioned "in an airport terminal, a public area, and surrounded by other people," the Sixth Circuit has determined that the "place of questioning" weighed against defining the defendant's detention as custodial. *United States v. Martin*, 95 F. App'x 169, 177 (6th Cir. 2004). As to the second factor, the length of the encounter at issue (*i.e.*, approximately 10 minutes) is well within the window of time courts generally consider to be non-custodial, *see United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) (interview lasting "only an hour and a half" was non-custodial), and the manner of questioning was not coercive for the reasons already stated above. Regarding the third factor, there was no restraint on Defendant's freedom of movement.

The only factor that may weigh slightly in favor of finding that Defendant was in custody is the fourth factor. On cross-examination, Agent Bernecker testified that he never told Defendant that he did not have to answer any questions. That said, failure to advise a person that he need not answer any questions "does not automatically render the encounter custodial." *United States v. Saylor*, No. 3:14-cr-00061-TBR, 2015 WL 13745752, at *6 (W.D. Ky. Sept. 24, 2015) (citing *United States v. Panak*, 552 F.3d 462, 467 (6th Cir. 2009)), *findings of fact and conclusions of law and recommendation adopted by* 2015 WL 6680903 (W.D. Ky. Nov. 2, 2015). Indeed, the Sixth Circuit has never required agents to inform a suspect that he can refuse to answer questions. *United States*

10

*v. Conder*, 529 F. App'x 618, 623 (6th Cir. 2013). And based on the totality of the circumstances, the Court concludes that Defendant was not in custody when he spoke to the agents. Accordingly, *Miranda* did not apply.

For these reasons, the Court concludes that the statements at issue were not obtained in violation of the Fifth Amendment. And in the absence of any other reason to do so, the Court will not suppress such statements.

## V.   CONCLUSION

Based on the record, the arguments presented, and the authorities cited, the Court concludes that the evidence and statements at issue were not obtained in violation of the Fourth or Fifth Amendments. Accordingly,

**IT IS ORDERED** that Defendant Genghis Khan Stevenson's Motion to Suppress (Doc. # 49) is **DENIED**. **IT IS FURTHER ORDERED** that this matter is scheduled for a **Scheduling Conference** on **July 24, 2025 at 1:00 p.m.** in Covington.

This 11th day of July, 2025.



Signed By:
David L. Bunning
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Covington Criminal\2024\24-34 MOO re MTS.docx