**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**COVINGTON**

**CRIMINAL NO. 24-34-S-DLB-CJS**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.** **SENTENCING MEMORANDUM**

**GENGHIS KHAN STEVENSON** **DEFENDANT**

* * * * *

The Defendant brought a large amount of fentanyl to this area to distribute. After selling a portion of it, he was caught at the airport in Boone County attempting to transport more than a quarter-kilogram of fentanyl and over $15,000.00 in currency back to Los Angeles. The Defendant has nine prior convictions, including weapons offenses and crimes of violence. He has consistently violated forms of conditional release after prior arrests and committed the current offense while on probation for one felony and out on bond for another. He has been charged with attempted murder for a drive-by shooting committed while on bond for this offense. Based on the 18 U.S.C. § 3553(a) sentencing factors, the United States recommends an upward variance to a sentence of 180 months in prison and five years of supervised release.

## I. Summary of offense:

Airport police learned that the Defendant was a passenger on a flight from CVG to Los Angeles on March 28, 2024, along with other information indicative of drug activity.

Agents checked his criminal history and learned of multiple felony convictions. Agents used a trained drug dog to sniff a piece of luggage checked by the Defendant and the dog alerted to the presence of the smell of controlled substances. Agents stopped the Defendant after he scanned his ticket to board the flight and asked to speak with him; the Defendant agreed. He indicated that he had a large amount of gambling winnings on his person but lied about the amount. The Defendant consented to a search of his luggage and checked bag. Agents opened the checked bag and located a vacuum-sealed bag containing a large amount of fentanyl. Agents also seized $15,095.00 in currency from the Defendant's carry-on bag. Deposit slips seized from the Defendant showed that he had recently deposited another $2,150.00 in currency during this trip. Lab testing confirmed that the seized substance weighed 251.9 grams and contained fentanyl, a Schedule II controlled substance.

The Defendant's girlfriend at the time of the arrest contacted law enforcement after the federal case was initiated. She told agents that the Defendant had been staying with her and had left items in her basement. Agents conducted a consent search of the basement and located a plastic tub belonging to the Defendant containing items consistent with processing fentanyl for distribution. These items included a hydraulic kilogram press, a smaller hand press, vinyl gloves, a common cutting agent, and a blender.

The girlfriend also told police that, subsequent to his arrest, the Defendant admitted to her that he had brought a larger amount of fentanyl to this area for distribution and was in the process of returning to California with the remaining fentanyl

since a local customer had not purchased as much fentanyl as the Defendant anticipated before making the trip to this area.

## II. Objections to the Presentence Report:

The United States is unaware of any objections requiring adjudication at sentencing. As discussed in other pleadings, we anticipate that the Prior Conviction Information will be removed and the statutory sentencing range adjusted to a term of not less than five and not more than forty years, a maximum fine of $5,000,000.00, and a term of supervised release of at least four years.

## III. Sentencing Factor Analysis:

The Defendant's advisory guideline range remains correctly calculated at 120-150 months. The Defendant's conduct in this case supports a sentence at the top or above the advisory guideline range. His relevant conduct involved more than a quarter-kilogram of fentanyl. Distribution of fentanyl is extremely profitable, as amply demonstrated by the funds seized from the Defendant and his recent bank deposits. Fentanyl is one of the most dangerous drugs commonly sold on the streets and has been linked to numerous fatal overdoses in this area and across the county.

The Defendant's claim to merely being a drug mule appears for the first time in his sentencing memorandum. It was not raised at trial or during his conversation with agents at the time of his arrest. That claim is entirely belied by the Defendant's admissions to his girlfriend about personally selling a portion of fentanyl and the numerous distribution items he stored at her residence.

The Defendant's personal characteristics support a sentence significantly above the top of the advisory guideline range. The Defendant has never expressed remorse or accepted responsibility for his actions. His education and work history are limited. His crimes were not driven by addiction. His family history is far better than most individuals convicted of serious drug offenses in this Court. Most of the typical explanations for drug trafficking that are offered to support requests for lesser sentences are not present in this case.

The Defendant's criminal history offers powerful evidence of his danger to the community, lack of respect for the law, the need for general and specific deterrence, and the requirement to provide needed correctional treatment by an extended period of incarceration. These factors, and the need to avoid an unwarranted sentencing disparity, support a substantial sentencing variance above the advisory guideline range.

As a starting point, it is worth noting that the Defendant has consistently committed violations of one form or another of conditional release by the commission of new crimes virtually every time he has been previously convicted of criminal offenses. His first conviction on December 3, 1996 (Paragraph 36 of the Presentence Report) was probated. The Defendant violated that probation by committing a new crime less than six months later (Paragraph 37). He was ordered to serve 180 days in jail for this second offense and placed back on probation (Paragraph 37). He promptly violated that term of probation by committing a new crime in November 1997 (Paragraph 38). While on bond for this third offense, he was arrested for making fake currency (Paragraph 39). He was arrested for stealing a car in March 1998 while on probation for prior offenses (Paragraph

40). That sentence was also probated with a requirement to serve 90 days in jail (Paragraph 40). He was arrested for stealing another car while on probation shortly after serving that 90-day term (Paragraph 41). This time he was ordered to serve a year in jail and put on probation for three years (Paragraph 41). After serving the jail portion of that sentence, while still on probation, he committed a robbery and carjacking involving the use of a firearm. (Paragraph 42). This resulted in a prison sentence of 14 years. (Paragraph 42). The Defendant was charged with a serious assault committed while serving that prison sentence and was sentenced to a consecutive term of six years for possession of a deadly weapon by a prisoner (Paragraph 43).

Even after the service of these cumulative sentences, the pattern of commission of serious crimes demonstrating extreme disregard for the law and public safety continued. The Defendant was arrested for being a felon in possession of a firearm on January 15, 2022 (Paragraph 49). That case is still pending (Paragraph 49). While on bond for that offense, the Defendant was arrested in May 2023 for assault with a firearm and eventually convicted of displaying a firearm while in the presence of a police officer (Paragraph 44). He was given credit for the 444 days he had served and placed on probation on March 20, 2024. (Paragraph 44). Almost immediately afterwards, he traveled to this area with his load of fentanyl and was arrested for the current offense on March 28, 2024 (Paragraph 8). While on bond for the current federal offense, the Defendant was charged with attempted murder for shooting a former girlfriend on January 19, 2026 (Paragraph 50). That case is also pending (Paragraph 50).

The sentencing factors of 18 U.S.C. § 3553(a) call for the Court to look deeper than the numerical calculation of criminal history and mechanical application of the sentencing guidelines to determine the appropriate sentence in light of the true danger posed by the Defendant to the community as shown by the circumstances of the current offense and the Defendant's past conduct. To do otherwise would create an unwarranted sentencing disparity. When considering the full continuum of the sentencing factors and the Defendant's profound history of disregarding the law and committing serious criminal offenses both in the general community and even while in prison, a sentence above the advisory guideline range is required.

## IV. Conclusion:

The United States recommends a sentence of 180 months in prison and five years of supervised release. Based on the unusual circumstances of this case, we ask the Court to recommend that the sentence run consecutively to all other sentences still to be imposed in pending cases.

Respectfully submitted,

JASON D. PARMAN
UNITED STATES ATTORNEY



By:

Anthony J. Bracke
Assistant United States Attorney
207 Grandview Drive, Suite 400
Ft. Mitchell, Kentucky 41017
(859) 655-3200
Anthony.Bracke@usdoj.gov

**CERTIFICATE OF SERVICE**

On October 1, 2026, I filed this document through the ECF system, which will provide a copy of the document to counsel for all parties.

s/ Anthony Bracke
Assistant United States Attorney